UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| EAN LAVAR JOHNSON | CIVIL ACTION NO. 04-2511-P |
|---|---|
| versus | JUDGE HICKS |
| WARDEN TIMOTHY WILKINSON, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Minden Police Officers made a traffic stop and, after removing all occupants from the car, found a small, .25 caliber pistol on the floorboard of the car where the feet of Ean Lavar Johnson ("Petitioner") had been. Petitioner was charged with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. A Webster Parish jury returned a unanimous verdict of guilty. The state appellate court (2-1) overturned the conviction based on a finding that the evidence was not sufficient to prove the crime. State v. Johnson, 839 So.2d 1247 (La. App. 2d Cir. 2003). The Supreme Court of Louisiana granted *certiorari* and found (5-2) that the evidence was sufficient. The Court reinstated the conviction and fifteen year sentence. State v. Johnson, 870 So.2d 995 (La. 2004).

Petitioner now seeks federal habeas corpus relief from his conviction. His petition alleged that the evidence was insufficient to support the conviction and asserted an "errors patent" claim. The court noted a lack of exhaustion of the errors patent claim, and Petitioner advised that he wished to dismiss the unexhausted claim and pursue only the sufficiency issue. Doc. 8. It is recommended, for the reasons that follow, that the errors patent claim be

dismissed without prejudice and that the sufficiency of the evidence claim be rejected on the merits.

**Elements of the Crime**

The Supreme Court of Louisiana stated that, to prove a violation of the charged statute, the prosecution must show that Petitioner was in possession of a firearm and was a convicted felon. Possession may be either actual or constructive, and constructive possession occurs when the firearm is subject to the felon's dominion and control. Mere presence in the area of the gun will not prove the exercise of dominion and control, but even temporary or shared dominion and control constitutes constructive possession. Johnson, 870 So.2d at 998-99. Neither party disputes the Supreme Court's description of the elements of the offense.

**The Evidence**

Minden Police Officer Wayne Chandler testified that he and other officers responded to a complaint of a disturbance at a motel. One of the officers was advised that a car leaving the motel had been involved in the disturbance, and officers stopped the car. The driver got out, and she appeared to be intoxicated. Another officer called and advised that he had found a large amount of drugs in the motel room the persons in the car had just left. Chandler testified that he saw Petitioner sitting in the driver's side rear seat, and he recognized him from several prior drug arrests. Chandler added that he could smell a strong odor of burnt marijuana on Petitioner's person.

Chandler kept his attention focused on Petitioner while the occupants were removed from the car. He said he wanted to make sure that Petitioner did not attempt to hide any drugs in the car. Chandler shined his flashlight on and around Petitioner while the front seat passenger and then the other rear seat passenger were removed from the car. Petitioner was the last person removed from the car.

The officers then searched the car and found the pistol on the floorboard "where his [Petitioner's] feet were." Chandler testified that Petitioner had "appeared to be hiding something from us" because he refused to make eye contact and had to be asked several times to get out of the car, "like he was scared to get out." Chandler said Petitioner kept asking why he had to get out. Chandler said he believed that Petitioner's feet were hiding the gun when Chandler was shining his light on the floorboard. Chandler testified that he could not reach the gun from the front of the car because there were too many bars beneath the seat, but he admitted that the small pistol could have passed where his hand would not. Tr. 12-22.

Officer Tim Morris testified that he assisted in the stop. He agreed with Chandler's testimony about the order in which the occupants were removed from the car. Morris testified that he was watching for any passing of objects between the occupants. When asked if he saw any such activity, he testified: "None of that occurred. I would have picked up on that real quick." He agreed with defense counsel that Petitioner had been kept under constant surveillance with flashlights until he was removed from the car. Tr. 66-70.

Sgt. Marvin Garrett testified that Petitioner was "very hesitant and wanted to know why he had to get out of the vehicle and he acted like he didn't want to just get out." When asked if it appeared Petitioner was hiding something, Garrett testified: "It appeared that he did have something to hide, yes." He also testified that the officers had been alert for any attempts to change seats and any hand motions, but none were observed. Tr. 79-87.

Lt. Jacob Hortman, III testified as a fingerprint expert. He said he was able to obtain three partial prints from the gun, but the prints were not sufficient to confirm or deny that they belonged to Petitioner or anyone in particular. Hortman said it would decrease his ability to obtain prints if the gun had been placed on the floorboard of the car with shoes on top of the gun. He added that there was also dirt on the weapon. Tr. 61-65.

The prosecution called Monica Eason as a hostile or adverse witness. Eason said she knew Petitioner and that they had "hung out" a couple of times. She claimed that she found the pistol near a dumpster two or three months before the traffic stop and had kept it in her apartment or her purse ever since, yet she was not able to demonstrate much knowledge about the gun. She did not know its manufacturer and was unable to articulate how to load the pistol. Then, when asked if she had loaded the pistol before, she said: "No, I have not. I have put bullets in it, but I took it right back out." She said she had never fired the gun and "I don't know how the safety works because I've never used it." She said she thought the safety was on the right side of the pistol. Tr. 25-32.

Eason testified that she was sitting in the middle of the back seat when the police removed Petitioner from the car. She said the officers put Petitioner in a police car, leaving her in the stopped car, and "That's when I scooted over to the side what he was on and that's when I put the gun up under the seat." Tr. 33. The prosecutor asked Eason if it was correct that she had not made her statement to the police about the gun until six days after Petitioner was arrested. The following exchange then occurred:

> A. I told the police that night and he told me he didn't want to hear what I had to say that Ean was going to jail anyway because he had smelled marijuana.
>
> Q. Oh, so you said the gun's mine and the police said, no, no, no, we don't want to hear that?
>
> A. That is what he said.
>
> Q. That's what you're saying?
>
> A. Yes. And he walked on to his car and they pulled out.
>
> Q. Now you're saying that you claimed the gun that night?
>
> A. Yes, I did.

Tr. 35-36. On cross-examination, Eason said that Petitioner had been the first occupant removed from the car and that the officers told the female occupants to stay put until a female officer arrived. Eason was again asked if she told one of the police officers that night that the gun was hers, and she answered: "Yes, sir." Tr. 36-38.[1]

---

[1] The Supreme Court of Louisiana's opinion reports that Eason "admitted that she remained silent when the officer asked to whom the gun belonged and it was not until six

Tinyia Reeder also testified as an adverse witness. She claimed to have been in the back seat with Eason and Petitioner. She said that after the police took Petitioner out of the car, Eason "kind of panicked and that's when she told me" that she had a gun. Eason then put the pistol under the seat. Reeder believed Eason put the gun on the right side of the car. Tr. 42-46. Reeder said she never heard the police ask who owned the gun and, although she was beside Ms. Eason the whole time, she never heard Eason say that the gun was hers. Tr. 46-47.

Officer Wayne Chandler was again called to the stand. He said he had no doubt that Petitioner had been removed from the car last and that Petitioner had been seated on the side where the gun was found. He repeated that he had put the gun on the roof of the car and asked whose it was. All of the occupants of the car were within earshot, but none came forward to claim the gun. Chandler said the gun had been loaded when it was seized, which was contrary to Ms. Eason's testimony. He added that the gun had a slide safety on the left side (not the right as claimed by Eason). Chandler said he believed there was no way Eason could have placed the gun from the front seat (where he said she was seated) to where it was found while the officers were watching the occupants. Tr. 54-57.

Petitioner was the only defense witness. He admitted three convictions for felony possession of marijuana. He, like the two adverse witnesses, testified that the officers first

---

days after the defendant's arrest" that she claimed ownership. That does not appear to be a correct characterization of Eason's testimony.

removed him from the car and placed him in a patrol car. He said the officers then focused on the driver and tested her for DWI, and they called a female deputy to come out and search the women in the car. Petitioner said he did not know whether Ms. Eason placed the gun in the car because he had not been in the car at that time. He said the first time he saw the gun was when Officer Chandler "waived it in front of me saying that we found your gun." On cross-examination, Petitioner admitted to a fourth felony marijuana conviction and a felony cocaine conviction that he had not disclosed on direct. Tr. 90-94.

**Analysis**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Supreme Court of Louisiana invoked and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme

Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

If the prosecution witnesses were accepted as credible, then it was rational to conclude that there was no reasonable doubt as to Petitioner's guilt. Witnesses testified that Petitioner was sitting in the spot where the gun was recovered, and officers testified they had watched the occupants carefully and would have seen any effort by another occupant to place the gun where it was found. Defense witnesses offered a different view of the facts, but there was ample reason for the jury to find those witnesses less credible than the witnesses offered by the prosecution.

Such credibility determinations are squarely within the province of the trier of fact. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). "A determination of a factual issue made by a State court shall be presumed correct" in a claim for federal habeas relief, and Petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005), quoting 28

U.S.C. § 2254(e)(1). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Id.

This was obviously a close case for the members of the state judiciary who reviewed the jury's unanimous verdict for sufficiency of the evidence. The three appellate court judges were divided 2-1, and two of the seven justices of the Supreme Court opined that the Jackson standard had not been satisfied.[2] The Supreme Court of Louisiana's application of Jackson to the facts in this case is perhaps debatable among reasonable jurists, but room for debate does not permit habeas relief. The Supreme Court's adjudication of the sufficiency issue was not so incorrect as to be an objectively unreasonable application of Jackson, and it is that demanding standard that Petitioner must satisfy to warrant federal intervention. Habeas relief is, therefore, not permitted.

Accordingly;

**IT IS RECOMMENDED** that (A) Petitioner's errors patent claim be dismissed without prejudice and (B) all other claims be rejected on the merits and dismissed with prejudice.

---

[2] One of the dissenting justices reasoned that the circumstantial evidence did not exclude every other reasonable hypothesis of innocence, and Petitioner echoes that argument in his memorandum. Louisiana has a rule found in La. R. S. 15:438 that a case based on circumstantial evidence must exclude every reasonable hypothesis of innocence, but a federal court does not apply that standard on habeas review. Only Jackson need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314, n. 9 (5th Cir. 1992).

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 20th day of October, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE